March, 1863.


# SUPREME COURT—IN ADMIRALTY.


## WILBERFORCE DUDLEY vs. JOHN WILKINSON.

THE libellant claimed ten months wages as master of a vessel, and the respondent denied any indebtedness. An account in any further detail is unnecessary for the purpose of making a demand.

A careful consideration is given to the testimony in relation to the alleged agreement for sailing the vessel.

ALLEN, C. J.

It is alleged in the libel, that the libellant was employed, on the 4th day of June, 1861, by the respondent, who was owner of the bark "Kathleen," to perform the duties of master of said vessel, and proceed in command of her from the port of Honolulu to San Francisco, said bark being consigned to Mr. A.

W. Dudley *vs.* J. Wilkinson.

P. Everett, with power to sell, and if a sale was not effected, to charter her; that the libellant in pursuance of said agreement took command of said vessel at this port, and proceeded to San Francisco, where he arrived on the 22d day of July, 1861. The consignee failing to effect a sale, chartered the vessel for the port of Geelong, in the colony of Victoria, Australia, with a cargo of wheat, from thence to New Castle for a return cargo of coal for San Francisco; and the said libellant took command of said vessel, for said voyage. It appears that the vessel, after some disaster, arrived in San Francisco, and delivered the coals remaining to the charterers—a portion having been thrown overboard for the preservation of the vessel. On arrival in San Francisco, the agent, Mr. Everett, having left the city, entrusted the agency to Messrs. McRuer & Merrill, who directed the libellant to proceed with the vessel to Honolulu, where he arrived on the 12th of April, last past, and paid to the respondent all the money in his hands, resulting from the voyage, his wages not being paid. He now claims the highest rate of wages as master, from the time he was employed at Honolulu till his return in April, 1862, there having been no specific agreement made.

It is admitted that the respondent is owner of the bark "Kathleen," and that the libellant was master during the voyage, as set forth in the libel; but it is denied that a sufficient demand has been made for settlement and payment. It is further averred in the answer that there was an agreement by the parties, that the libellant should sail the said bark for one-third of the profits, to be derived from her employment, but unfortunately no profits have been derived from said service.

It appears, in evidence, that the counsel of the libellant addressed a note to the British Consul, claiming ten months wages as master of said bark, in which he says that the respondent declines to pay his wages, and asks the Consul's interposition. Whereupon the Consul addressed a note to the libellee on the subject, and received in reply an acknowledgement of his note, with a copy of the note of the counsel for the libellant to Mr. Green, and requested an account of the receipts and disbursements of the bark, which were duly made and presented.

Mr. Green testifies that the parties met in his office in regard

to the settlement of the accounts, and then Mr. Wilkinson stated that the master agreed to go on thirds, and as there were no profits there were no wages, which the master denied.

It is clear from this statement that there was a claim presented for ten months wages, and a positive denial of the payment. of any sum, on the ground that the master had undertaken to serve on shares, and that the voyage having resulted without profit, he was not entitled to any compensation.

The object of the demand is to enable the parties to settle without a suit, and in all this class of cases it is a legal necessity. In this case the evidence is conclusive that an opportunity was afforded for a settlement, but the respondent denying any indebtedness, there was no occasion for the libellant to make out an account in any farther detail than he had. He claimed ten months wages; the respondent denies any indebtedness. His answer, if true, was a just denial; for if the contract was for a share of profits, there was no claim for wages. Therefore the Court is clearly of opinion that a sufficient demand had been made by the libellant to enable him to institute a suit.

But the serious question in the case is, whether there was an agreement by the parties, that the master should sail the vessel on shares, as averred in the answer.

It is alleged and admitted that the owner sent to Mr. Everett of San Francisco, by the master, when he sailed for that port, a power of attorney to sell the vessel, and if he did not succeed in making the sale, that he should do his best in chartering her. Not being able to effect a sale on terms deemed by him satisfactory, he negotiated a charter for Australia and for a return cargo to San Francisco, all which was accomplished, the business there being done by Mr. Everett, and by his substitutes, McRuer & Merrill. The respondent introduced Mr. Place, who testified that he heard some conversation between the parties, at Mr. Wilkinson's Hotel, in which the captain, having requested the respondent to give him some ale, asked him which was the most expensive, the bottled or the draught ale, and if he expected him to pay one-third of that, as he had for the other things, to which he replied that he did.

Mr. Hart testifies that he was at work on board the " Kathleen" discharging coals, and asked the libellant for some spun-

yarn, he replied that he had not got any, whereupon the witness sent to the Government Store for some, and much more was brought than was necessary for his use at the time. The libellant said, you had better leave it on board the ship. Witness replied, you can "buy plenty on shore," to which libellant replied that, he felt himself rather poor and not able to buy it, being a new man as captain of a vessel. Witness told him it was nothing out of his pocket, but, he said it was, as he was on shares in the vessel. The witness further states that Mr. Dudley was mate at this time.

Mr. Ruddock testifies that the parties requested him to keep the bark's account separate ; and heard the captain say, when shipping a man, that, as he had to pay part of the wages himself, he should ship whom he thought proper. He said further, that he heard the respondent say to the captain, that the more he made for him the more he would make for himself, to which the captain replied, that he was aware of it, and should do his best. Witness says further, "I heard Wilkinson say, in presence of Dudley, that the vessel was to be sold in California, if it would fetch its price, and if not, he was to get a cargo of light freight back to these Islands, but not to proceed to the South Seas. Dudley sanctioned that. Dudley sailed upon that understanding to the best of my knowledge. That was the same day the vessel sailed. I could not tell you what Wilkinson meant by saying to Dudley, that the better he did for him, the better he would do for himself, but, from what I heard Wilkinson say after, I supposed that, he, Dudley was going to sail her on shares to California and back to Honolulu."

It is very much to be regretted that contracts of this character are not in writing. So far as the shipment of seamen is concerned, it is necessary, in most countries, to make the contract obligatory. Parole testimony usually, as in this case, is most unsatisfactory. It gives incidental conversation only. There is no testimony of the terms of the entire contract, or of the share, whether one-third or one-half, any further than it is a matter of inference from the proportion the Captain says he is obliged to pay for the ale. Ruddock's testimony is quite conclusive as regards the extent of the voyage. That it was to San Francisco, and if the vessel was not sold, that she should

return to Honolulu. The letter of attorney to Mr. Everett, empowered him to sell, so that, so far as this testimony influences the case, it is apparent that the object of the owner was to make sale of the vessel, and if not sold, to have her return here. But the agents at San Francisco gave a different direction to the vessel; and sent her to Australia. The weight of evidence limits the contract of shares to San Francisco and back to this port. Unless there is proof that the captain acquiesced in this charter to Australia, so that he would sail on the same terms as he had done before, it cannot prevail. As the case stands, had the vessel made a large charter and the captain claimed a share of the profits, and the owner claimed to pay wages, there can be no question that the latter would prevail. There is no evidence that the contract extended to any charter which might be made in San Francisco—for a charter was not anticipated unless to return to this port. It is very apparent that the owner was very hostile to any arrangement for a voyage to the South Seas. In view of the whole matter I am satisfied that the contract embraced the voyage on shares to San Francisco and back to this port, and no more. It is contended that as the captain had made no bargain with Everett, it follows that the same bargain made in Honolulu would be in force under the charter to Australia. This would be certainly true if the agreement extended to any voyage which the bark might make, but, the evidence of navigating the vessel on shares, extends only to San Francisco and back to Honolulu; and to sustain the position of the counsel for the respondent, it is incumbent upon him to prove that the master and owner had, by their agreement, extended the same on the voyage to Australia, which he has failed to do.

The Court, therefore, decrees that the libellant is entitled to recover of libellee wages for his services as master of the bark "Kathleen," from San Francisco to Australia and back to San Francisco and thence to this port. And it is ordered that it be referred to the Clerk of the Court acting as master, to make up an account of wages, deducting the amount of money the libellant has received.

Mr. Montgomery, for the libellant.

Mr. Harris, for the respondent.